*MHN*

**FILED**

5-14-2008

MAY 1 4 2008

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
                                 )    No. 08 CR 125-1
       vs.                    )    Judge Harry D. Leinenweber
                                 )
KEVIN JAMES BUJAK        )

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant KEVIN JAMES BUJAK, and his attorney, DONALD YOUNG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The information in this case charges defendant with three counts of bank robbery in violation of Title 18, United States Code, Sections 2113(a) and 2(a).

3.    Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information charges defendant with three counts of bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and 2(a).

1

**Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a.     With respect to Count One of the information, defendant KEVIN JAMES BUJAK admits that on or about January 9, 2008, at Oak Lawn, in the Northern District of Illinois, Eastern Division, he took by force and violence, and by intimidation, from the person and presence of a bank employee approximately $5,985 in United States currency belonging to and in the care, custody, control, management, and possession of LaSalle Bank, located at 4046 111th Street, Oak Lawn, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Sections 2113(a) and 2(a).

More specifically, defendant admits that on or about January 9, 2008, around 3:17 p.m., he entered the LaSalle Bank located at 4046 111th Street, Oak Lawn, Illinois, wearing a baseball cap and a flannel jacket. Defendant presented a bank teller with a note that said words to the effect of: "I have a gun, give me all of your $100's, $50's, $20's and $10's." Defendant then told the teller words to the effect of: "Hurry up, honey, this is not a joke." Defendant admits that he took approximately $5,985 in United States currency from the teller and fled the bank. Defendant admits that he then entered a two-tone green van that he and his co-defendant, Michelle Bujak, had purchased with earlier-obtained robbery proceeds, and that Michelle Bujak drove them away from the bank.

Defendant acknowledges that the LaSalle Bank located at 4046 111th Street, Oak Lawn, Illinois was insured by the Federal Deposit Insurance Corporation at the time he committed the bank robbery.

b.    With respect to Count Two of the information, defendant admits that on or about January 30, 2008, at Park Ridge, in the Northern District of Illinois, Eastern Division, he took by force and violence, and by intimidation, from the person and presence of a bank employee approximately $6,000 in United States currency belonging to and in the care, custody, control, management, and possession of TCF Bank, located at 1 Devon Avenue, Park Ridge, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Sections 2113(a) and 2(a).

More specifically, defendant admits that on or about January 30, 2008, around 4:15 p.m., he entered the TCF Bank located at 1 Devon Avenue, Park Ridge, Illinois, wearing a baseball-style cap and a checked jacket. Defendant admits that he presented a bank teller with a note with the word "gun" written on it. Defendant admits that he told the teller to "hurry up," that "this is not a joke" and that the teller should not include a dye pack with the money. Defendant admits that he took approximately $6,000 in United States currency from the teller and fled the bank. Defendant admits that he then entered a two-tone green van that he and Michelle Bujak had purchased with earlier-obtained robbery proceeds, and that Michelle Bujak drove them away from the bank.

Defendant acknowledges that the TCF Bank located at 1 Devon Avenue, Park Ridge, Illinois was insured by the Federal Deposit Insurance Corporation at the time he committed the bank robbery.

c.      With respect to Count Three of the information, defendant admits that on or about February 8, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, he took by force and violence, and by intimidation, from the person and presence of a bank employee approximately $1,150 in United States currency belonging to and in the care, custody, control, management, and possession of Plaza Bank, located at 6500 W. Irving Park Road, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Sections 2113(a) and 2(a).

More specifically, defendant admits that on or about February 8, 2008, around 3:30 p.m., he entered the Plaza Bank located at 6500 W. Irving Park Road, Chicago, Illinois. Defendant admits that he presented a bank teller with a note which had words to the effect of: "give me all your money, I will kill you, I have a gun." Defendant admits that he told the teller words to the effect of: "this is no joke, hurry up, give me only big bills, do what the note says." Defendant admits that he took approximately $1,150 in United States currency from the teller and fled the bank. Defendant admits that he then entered a two-tone green van that he and Michelle Bujak had purchased with earlier-obtained robbery proceeds, and that Michelle Bujak drove them away from the bank.

Defendant acknowledges that the Plaza Bank located at 6500 W. Irving Park Road, Chicago, Illinois was insured by the Federal Deposit Insurance Corporation at the time he committed the bank robbery.

7.      Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following eleven additional bank robberies:

a.      Defendant stipulates that on November 29, 2007, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $3,239 in United

4

States currency belonging to and in the care, custody, control, management, and possession of LaSalle Bank, located at 4046 111th Street, Oak Lawn, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented a bank employee with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery, he entered a car that he and Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

b.      Defendant stipulates that on December 8, 2007, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $8,632 in United States currency belonging to and in the care, custody, control, management, and possession of First Midwest Bank, located at 12727 S. Ridgeland Blvd., Palos Heights, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented a bank employee with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery, he entered a car that he and Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

c.      Defendant stipulates that on December 21, 2007, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $1,975 in United States currency belonging to and in the care, custody, control, management, and possession of Charter One, located at 4062 Southwest Highway, Hometown, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he

5

presented a bank employee with a demand note that stated that he had a gun and that he further told the employee that it was not worth her life not to comply with his demand. Defendant further stipulates that, after this robbery, he entered a car that he and Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

      d.     Defendant stipulates that on December 26, 2007, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $2,957 in United States currency belonging to and in the care, custody, control, management, and possession of First Suburban Bank, located at 5601 W. 127th Street, Crestwood, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented a bank employee with a demand note that stated that he had a gun and that he threatened to kill her. Defendant further stipulates that, after this robbery, he entered a car that he and Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

      e.     Defendant stipulates that on December 31, 2007, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $4,060 in United States currency belonging to and in the care, custody, control, management, and possession of LaSalle Bank, located at 6425 W. Belmont Avenue, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented a bank employee with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery, he entered a car that he and Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

f.      Defendant stipulates that on January 19, 2008, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $1,983 in United States currency belonging to and in the care, custody, control, management, and possession of First Commercial Bank, located at 3200 W. Touhy Avenue, Skokie, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented a bank employee with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery, he entered a van that he and Michelle Bujak had purchased with earlier-obtained robbery proceeds, and that Michelle Bujak drove them away from the bank.

g.      Defendant stipulates that on January 24, 2008, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $3,400 in United States currency belonging to and in the care, custody, control, management, and possession of Fifth Third Bank, located at 5950 W. Touhy Avenue, Niles, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented a bank employee with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery, he entered a van that he and Michelle Bujak had purchased with earlier-obtained robbery proceeds, and that Michelle Bujak drove them away from the bank.

h.      Defendant stipulates that on February 10, 2008, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $1,273 in United States currency belonging to and in the care, custody, control, management, and possession of TCF Bank, located at 2301 N. Harlem, Chicago, Illinois, the deposits of which were then insured by the

7

Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

Defendant further stipulates that, during the course of this robbery, he presented a bank employee

with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery,

he entered a van that he and Michelle Bujak had purchased with earlier-obtained robbery proceeds,

and that Michelle Bujak drove them away from the bank.

i.     Defendant stipulates that on February 12, 2008, he took, by force and violence, and

by intimidation, from the person and presence of bank employees approximately $915 in United

States currency belonging to and in the care, custody, control, management, and possession of First

American Bank, located at 1345 W. Diversey, Chicago, Illinois, the deposits of which were then

insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code,

Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented

a bank employee with a demand note that stated that he had a gun and that he further told the teller

he had a gun.  Defendant further stipulates that, after this robbery, he entered a car that he and

Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

j.     Defendant stipulates that on February 14, 2008, he took, by force and violence, and

by intimidation, from the person and presence of bank employees approximately $948 in United

States currency belonging to and in the care, custody, control, management, and possession of TCF

Bank, located at 5600 N. Kimball, Chicago, Illinois, the deposits of which were then insured by the

Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

Defendant further stipulates that, during the course of this robbery, he presented a bank employee

with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery,

he entered a car that he and Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

k.      Defendant stipulates that on February 16, 2008, he took, by force and violence, and by intimidation, from the person and presence of bank employees approximately $3,190 in United States currency belonging to and in the care, custody, control, management, and possession of LaSalle Bank, located at 4825 N. Austin Avenue, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a). Defendant further stipulates that, during the course of this robbery, he presented a bank employee with a demand note that stated that he had a gun. Defendant further stipulates that, after this robbery, he entered a van that he and Michelle Bujak had stolen, and that Michelle Bujak drove them away from the bank.

## Maximum Statutory Penalties

8.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      A maximum sentence of 20 years of imprisonment for each count. Each offense also carries a maximum fine of $250,000 for each count. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Defendant further understands the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each charge to which he has pled guilty, in addition to any other penalty imposed.

d.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 60 years' imprisonment. In addition, defendant is subject to a total maximum fine of $750,000, a period of supervised release, and special assessments totaling $300, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    Pursuant to Guideline § 2B3.1(a), the base offense level for each of Counts One through Three and for each of the stipulated offenses is 20.

ii.    Pursuant to Guideline § 2B3.1(b)(1), the base offense level for each of Counts One through Three and for each of the stipulated offenses is increased by 2 levels because defendant took the property of a financial institution.

10

iii.     Pursuant to Guideline § 2B3.1(b)(2)(F), the base offense level for each of Counts One through Three and for each of the stipulated offenses is increased by 2 levels because defendant made a threat of death in the course of each robbery.

iv.     Pursuant to Guideline § 3D1.4, the combined offense level for defendant's offenses of conviction and stipulated offenses is determined by taking the offense level applicable to the robbery with the highest offense level and increasing it by 5 levels because there are more than five units for purposes of Guideline § 3D1.4. Each of the three offenses of conviction and each of the eleven stipulated offenses counts as a different unit and group pursuant to Guideline § 3D1.4, as each involves a bank robbery and as the offense level for each is equally serious.

v.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the combined offense level is appropriate.

vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the combined offense level.

11

c.    **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal eight (8) and defendant's criminal history category is IV:

i.    On or about August 4, 1995, defendant was convicted of a misdemeanor charge of reckless conduct in the Circuit Court of Cook County, Illinois and received a sentence of 30 hours of community service and one year of supervision.  Pursuant to Guideline §§ 4A1.1(c) and 4A1.2(e)(2), defendant receives 0 criminal history points for this conviction.

ii.    On or about January 5, 2001, defendant was convicted of a misdemeanor charge of retail theft / shoplifting in the Circuit Court of Cook County, Illinois and received a sentence of one year of probation.  Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

iii.    On or about April 11, 2001, defendant was convicted of possession of less than 15 grams of heroin in the Circuit Court of Cook County, Illinois and received a sentence of one year of probation and two days of community service.  Defendant subsequently was found guilty of violating his probation and was sentenced to two years of intensive drug probation.  Defendant subsequently was found guilty of violating his probation a second time, and his probation was terminated and he was sentenced to 18 months of imprisonment.  Pursuant to Guidelines §§ 4A1.1(a) and 4A1.2(k)(1), defendant receives 3 criminal history points for this conviction.

iv.    On or about October 17, 2001, defendant was convicted of retail theft in the Circuit Court of Cook County, Illinois and received a sentence of two years of probation.  After a violation of probation petition was allowed, defendant was sentenced to two years of

12

imprisonment. Pursuant to Guidelines §§ 4A1.1(a) and 4A1.2(k)(1), defendant receives 3 criminal history points for this conviction.

       v.     On or about April 19, 2002, defendant was convicted of a misdemeanor charge of retail theft / shoplifting in the Circuit Court of Cook County, Illinois and received a sentence of 50 days of imprisonment. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

       d.     **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated combined offense level is 26, which, when combined with the anticipated criminal history category of IV, results in an anticipated advisory Sentencing Guidelines range of 92 to 115 months of imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

       e.     Defendant and his attorney and the government acknowledge that the above Guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.      The government is free to recommend whatever sentence it deems appropriate within the applicable advisory Guidelines range.

12.      It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.      Regarding restitution, the defendant acknowledges that the offenses of conviction are offenses against property that resulted in

(1) a loss of $5,985 to LaSalle Bank, 4046 111th Street, Oak Lawn, Illinois,

(2) a loss of $6,000 to TCF Bank, 1 Devon Avenue, Park Ridge, Illinois, and

(3) a loss of $1,150 to Plaza Bank, 6500 W. Irving Park Road, Chicago, Illinois,

and that, pursuant to Title 18, United States Code, Section 3663A(a)(1), the Court must order defendant to make restitution in that amount, minus any credit for funds repaid prior to resentencing.

Defendant further agrees, pursuant to Title 18 United States Code, Section 3663A(a)(3) to the entry of an order requiring him to make restitution in the additional amounts of:

(1) $3,239 to LaSalle Bank, 4046 111th Street, Oak Lawn, Illinois;

(2) $8,632 to First Midwest Bank, 12727 S. Ridgeland Blvd., Palos Heights, Illinois;

(3) $1,975 to Charter One, 4062 Southwest Highway, Hometown, Illinois;

(4) $2,957 to First Suburban Bank, 5601 W. 127th Street, Crestwood, Illinois;

(5) $4,060 to LaSalle Bank, 6425 W. Belmont Avenue, Chicago, Illinois;

(6) $1,983 to First Commercial Bank, 3200 W. Touhy Avenue, Skokie, Illinois;

(7) $3,400 to Fifth Third Bank, 5950 Touhy Avenue, Niles, Illinois;

(8) $1,273 to TCF Bank, 2301 N. Harlem, Chicago, Illinois;

(9) $915 to First American Bank, 1345 W. Diversey, Chicago, Illinois;

(10) $948 to TCF Bank, 5600 N. Kimball, Chicago, Illinois; and

(11) $3,190 to LaSalle Bank, 4825 N. Austin Avenue, Chicago, Illinois,

for a total restitution amount of $32,572. Defendant understands that Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule, if any, according to which restitution is to be paid in this case.

14.    Defendant agrees to pay the special assessment of $300 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

Pre-Sentence Investigation Report/Post-Sentence Supervision

15.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Investigation Report and at sentencing shall fully

15

apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 125-1.

19.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Right to be charged by indictment.** Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than 16 and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

17

**b.     Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. .     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving the defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence and considering each count separately, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

18

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the legality of the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

21.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

19

## Conclusion

22.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

23.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

25.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

20

26.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___5 - 14 - 68___

PATRICK J. FITZGERALD
United States Attorney

KEVIN JAMES BUJAK
Defendant

STEPHEN CHAHN LEE
Assistant United States Attorney

DONALD YOUNG
Attorney for Defendant

21